# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMED SALADDIN MOUSA,<br><br>Plaintiff,<br><br>v.<br><br>TRUMP ADMINISTRATION, et al.,<br><br>Defendants. | Case No. 1:19-cv-01349-LJO-SAB (PC)<br><br>ORDER GRANTING PLAINTIFF LEAVE TO FILE A FIRST AMENDED COMPLAINT<br><br>(ECF No. 1)<br><br>THIRTY DAY DEADLINE |

Mohamed Saladdin Mousa ("Plaintiff"), a state prisoner, is appearing pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's complaint, filed on September 25, 2019. (ECF No. 1.) On October 3, 2019, the Court screened Plaintiff's complaint and findings and recommendations issued recommending dismissing the complaint as duplicative of an action filed in the Northern District of California. (ECF No. 6.) Plaintiff filed objections to the findings and recommendations and based on those objections, the Court vacated the October 3, 2019 findings and recommendations. (ECF Nos. 9, 11.) The Court now screens Plaintiff's complaint.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or

that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## ALLEGATIONS IN COMPLAINT

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently housed at the California Correctional Institution at Tehachapi. Generally, Plaintiff contends that the Trump administration has failed to honor asylees and refugees who are here in the United States by commanding Immigration and Custom Enforcement ("ICE")[1] to place a hold on them when they get into trouble. Plaintiff contends that

---

[1] "In 2002, Congress enacted the Homeland Security Act, Pub. L. No. 107–296, 116 Stat. 2135, abolishing the INS and transferring most of its immigration functions to the newly-formed Department of Homeland Security ("DHS"), in which Immigration and Customs Enforcement ("ICE") is housed." Flores v. Lynch, 828 F.3d 898, 904 (9th Cir. 2016).

2

he came here legally and was granted asylum under the United Nations Convention Against Torture and the Trump administration is trying to have him deported so that he can be executed by the government that he sought to get away from. Plaintiff states that most refugees, including himself, no longer have citizenship in other countries since they were driven out and their citizenship has been revoked. Plaintiff states that it will be difficult to deport most refugees because there is no country that will issue travel documents to someone who is no longer a citizen.

Plaintiff alleges that even thinking about taking away the status of someone who has been granted asylum is a violation of the U.N. convention, a threat to their life, and a waste of federal funds to house and feed them at federal detention centers. Further, the United States will not be able to deport them because no county will take them and ICE will have to release them resulting in more people illegally in the United States. Plaintiff contends that the Trump Administration has failed to comply with the U.N. Convention Against Torture since he is trying to take away the protected status of individuals who have been granted status under the convention and Plaintiff is one of them. Plaintiff contends that ICE tortures the asylee or refugee because whenever an asylee or refugee is jailed for any reason, ICE furiously places a hold or detention on the individual no matter his status or whether or not he is deportable.

Plaintiff states that the time that the between the immigration hold and the individual seeing an immigration judge can take months or even years. The individual has served his full term of imprisonment since the ICE hold prevents him from getting time reduced or early release or program release.

Plaintiff has had an ICE hold in place since July of 2019. Plaintiff contends that California Penal Code Sections 1381 and 1389 require that he go to court while concurrently incarcerated and the failure to comply should result in the dismissal of the detainer. Plaintiff filed a grievance and CDCR officials responded that the sections are not applicable to an ICE detainer because it is a federal hold. Plaintiff responded that he wanted them to investigate or to have him placed in ICE custody or dismiss the hold. His grievance has been pending since the end of July 2019. Plaintiff states that depriving him of the protections of sections 1381 and 1389

is causing his time in custody to be torture. Plaintiff states that the CDCR knows that the ICE hold is obvious torture.

Plaintiff was told by Correctional Counselor Soares in a classification hearing that, because of the ICE hold, he will not be eligible for time reduction at thirty-three percent and his time will remain at fifty percent unlike other inmates. Plaintiff contends that he won his previous deportation cases and in his last case was granted asylum. Plaintiff alleges that the ICE hold violates double jeopardy.

Egypt revoked Plaintiff's citizenship in 2013. Plaintiff sent a letter to the ICE office in Bakersfield explaining his situation and asking for their cooperation. He asked that they review his statement and his file and dismiss the ICE hold they had placed on him. He has not received a response since June 2019. Plaintiff brings this action against the Trump Administration, Immigration and Customs Enforcement, the CDCR, and the Warden of the Sierra Conservation Center seeking for the Court to dismiss the ICE hold.

## III.

## DISCUSSION

### A. Section 1983

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones, 297 F.3d at 934. To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185.

There is no *respondeat superior* liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff brings this action against the Warden at the Sierra Conservation Center; however, the complaint is devoid of any factually allegations to demonstrate that the warden

participated in any conduct that would violate Plaintiff's federal rights.

Further, under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Crowley, 734 F.3d at 977 (citation and internal quotation marks omitted).

Plaintiff has failed to state a claim against the Warden at the Sierra Conservation Center.

**B.  Plaintiff has Failed to State a Claim Against the State Defendants**

1. <u>Immunity Under the Eleventh Amendment</u>

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities[,]" Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007), "regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity," Yakama Indian Nation v. State of Washington, 176 F.3d 1241, 1245 (9th Cir. 1999); see also Seminole Tribe of Fla. v. Florida, 116 S. Ct. 1114, 1122 (1996).

"[A] suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102 (1984). "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" Pennhurst State School Hosp., 465 U.S. at 102 n.11 (quoting Dugan v. Rank, 372 U.S. 609, 620 (1963)). Eleventh Amendment immunity has not been abrogated with respect to claims brought under section 1983. Quern v. Jordan, 440 U.S. 332, 341–42 (1979); Alabama v. Pugh, 438 U.S. 781–82 (1978).

As a department of the State of California, CDCR is entitled to immunity under the Eleventh Amendment, and Plaintiff cannot bring this action against the CDCR. Plaintiff has failed to state a claim against the State defendants. However, at this time, the Court cannot find

that there are no facts that could be alleged that would enable Plaintiff to state a claim in this action. Therefore, the Court provides Plaintiff with the following legal standards that appear to apply to his claims.

        2.      <u>Due Process Under the Fourteenth Amendment</u>

Plaintiff alleges that he filed an inmate appeal regarding his demands that he be taken to court pursuant to section 1381 and 1389 of the California Penal Code and he received a response that these sections do not apply to ICE detainers. He requested that CDCR investigate for him and help him to either be placed into ICE custody or dismiss the hold. Additionally, Plaintiff states that he has been informed that due to the ICE hold he is not entitled to time reduction credits at 33 percent and his custody credits remain at 50 percent. The Court construes these claims as alleging violations of due process.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005). The due process clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. <u>Albright v. Oliver</u>, 510 U.S. 266, 272 (1994).

The substantive protections of the due process clause bar certain governmental actions regardless of the fairness of the procedures that are used to implement them. <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 840 (1998). Therefore, the substantive protections of the due process clause are intended to prevent government officials from abusing their power or employing it as an instrument of oppression. <u>Lewis</u>, 523 U.S. at 846. The Supreme Court has held that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' " <u>Id.</u> at 847. "[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense." <u>Brittain v. Hansen</u>, 451 F.3d 982, 990 (9th Cir. 2006) (quoting <u>Lewis</u>, 523 U.S. at 846).

"Substantive due process is ordinarily reserved for those rights that are 'fundamental.' " <u>Brittain</u>, 451 F.3d at 990. "The protections of substantive due process have for the most part

been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity[;] and the Supreme Court has been reluctant to expand the concept of substantive due process. Albright, 510 U.S. at 271-72. To state a substantive due process claim, a plaintiff must "show both a deprivation of [his] liberty and conscience shocking behavior by the government." Brittain, 451 F.3d at 991.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972). "[P]rocedural due process claims are resolved by balancing tests, where differing interests can give rise to many differing procedural requirements." Brittain, 451 F.3d at 1000. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought. Wilkinson, 545 U.S. at 221; Brittain, 451 F.3d at 991. The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence. Sandin v. Conner, 515 U.S. 472, 480 (1995). However, a state may "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483-84. A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484).

Liberally construed, Plaintiff's complaint alleges three potential liberty interests: a right to be taken to court under sections 1381 and 1389 of the Penal Code, a right to be transferred to federal custody; and a right to earn custody credits. The Court considers whether Plaintiff has a protected interest in any asserted right.

    **a.**    **Penal Code Section 1381 and 1389**

Liberally construed, Plaintiff is alleging that his rights have been violated because prison officials have failed to take him let him appear on the detainer as required by sections 1381 and

1389 of the California Penal Code. Section 1381 of the California Penal Code provides that whenever a defendant has been convicted in a court in the State of California of a felony or misdemeanor and has been sentenced to a term of imprisonment in a state prison or county jail and at the time of commitment

> there is pending, in any court of this state, any other indictment, information, complaint, or any criminal proceeding wherein the defendant remains to be sentenced, the district attorney of the county in which the matters are pending shall bring the defendant to trial or for sentencing within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial or for sentencing unless a continuance beyond the 90 days is requested or consented to by the person, in open court, and the request or consent entered upon the minutes of the court in which event the 90-day period shall commence to run anew from the date to which the consent or request continued the trial or sentencing.

Cal. Penal Code § 1381. Section 1381 only addresses a pending "indictment, information, complaint, or any criminal proceeding wherein the defendant remains to be sentenced" and does not apply to ICE detainers.

The Interstate Agreement on Detainers ("IAD"), codified by section 1389 of the California Penal Code, is "an agreement between California, 47 other states, and the federal government. It facilitates the resolution of detainers, based on untried indictments, informations or complaints in one jurisdiction, lodged against persons who have 'entered upon a term of imprisonment' in another jurisdiction." People v. Lavin, 88 Cal.App.4th 609, 612 (2001) (quoting People v. Rhoden, 216 Cal.App.3d 1242, 1249 (1989). The IAD provides that

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Cal. Penal Code § 1389, Art. I. The United States of America is a "state" within the meaning of the agreement. Id., Art. II(a). A detainer under the IAD "is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending

criminal charges in another jurisdiction." Lavin, 88 Cal.App.4th at 612 (quoting United States v. Mauro, 436 U.S. 340, 359 (1978)). "The IAD establishes a procedure by which a prisoner against whom a detainer has been lodged may demand trial within 180 days of a written request for final disposition properly delivered to the prosecutor and appropriate court of the prosecutor's jurisdiction. The failure of the state receiving the request to act in compliance with the IAD and the 180-day limit results in dismissal of the pending criminal charges with prejudice." Lavin, 88 Cal.App.4th at 612–13 (internal citations omitted).

However, Plaintiff's detainer is not based on an untried indictment, information, or complaint and the IAD does not apply to immigration holds. United States v. Gonzalez-Mendoza, 985 F.2d 1014, 1016 (9th Cir. 1993).

California has not created a liberty interest under the Fourteenth Amendment to be brought within a certain time to address an immigration hold. Plaintiff has failed to state a due process claim based on his allegations that he was not brought to face the immigration detainer.

### b. Custody Credits

Plaintiff contends that his rights are violated because, due to the immigration hold, he is only able to earn time credits at 50 percent, rather than at 33 percent.[2] The Supreme Court has held that the Due Process Clause does not create a liberty interest in custody credits. Sandin, 515 U.S. at 477-78. While a state can create a liberty interest, in the prison context it is not the mandatory language of the statute that creates a liberty interest. Id. at 481-83.

> [T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in Wolff[ v. McDonnell, 418 U.S. 539 (1974)] and Meachum[ v. Fano, 427 U.S. 215 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

---

[2] The Court assumes that Plaintiff is referring to credit which can be earned at 66.6 percent for inmates in minimum A or B custody pursuant to section 3377.1 of Title 15 of the California Code of Regulations or those inmates eligible at a Department of Forestry and Fire Protection fire camp or who work as a firefighter within the Department of Corrections and Rehabilitation firehouse. See Cal. Code Regs. tit. 15, § 3043.2(b)(5).

Sandin, 515 U.S. at 483-84 (internal citations omitted). "After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " Wilkinson, 545 U.S. at 223.

California has made clear that earning credits "is a privilege, not a right" and credit must be earned and may be forfeited. California Penal Code § 2933(c); see also Kalka v. Vasquez, 867 F.2d 546, 547 (9th Cir. 1989) (Section 2933"does not create a constitutionally protected liberty interest.") (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1095 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. 472. Plaintiff has failed to allege any facts to demonstrate that the denial of custody credits "imposes atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Plaintiff's allegation that he is being denied the ability to earn custody credits at a higher rate fails to state a due process claim. See Perez v. Lappin, 672 F.Supp.2d 35, 42 (D.D.C. 2009) (quoting Becerra v. Miner, 248 Fed.Appx. 368, 370 (3d Cir. 2007) and Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002)) ("Being classified with a PSF of 'deportable alien' and its resulting consequences of disqualification for certain programs, as with any other security classification, is not outside what a prisoner 'may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.' ").

### c. Transfer to Federal Custody

Based on the allegations in the complaint, Plaintiff is currently serving his sentence under state law and has not been transferred into custody on the federal immigration matter. Therefore, Plaintiff is currently in custody on an underlying state criminal conviction.

> A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a). The statute itself provides that the detainer is a request for the agency

having custody of Plaintiff to advise when Plaintiff is set to be released so that ICE can assume custody of Plaintiff.

However, Plaintiff has no liberty interest in being placed in federal custody while he is serving his state sentence. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (no protectable interest in being housed in a specific prison or particular state); Meachum, 427 U.S. at 229 (Due Process Clause does not impose a rule mandating transfer hearings); Corgain v. Miller, 708 F.2d 1241, 1254 (7th Cir. 1983) (United States Constitution does not mandate hearings to be transferred from state to federal custody); United States v. Klein, 589 F. App'x 909, 911 (10th Cir. 2014) (no protectable liberty interest in having the term of supervised release proactively revoked so that defendant can be transferred from a state institution into federal custody); Roberts v. Myers, No. 4:11-CV-01756-RBH, 2012 WL 2018521, at *3 (D.S.C. June 5, 2012) ("the mere lodging of a detainer does not rise to a deprivation of a liberty interest").

Plaintiff has failed to identify a liberty interest that would be protected by the Due Process Clause.

### C. Plaintiff has Failed to State a Claim Against the Trump Administration or ICE

1. Third Party Standing

Initially, to the extent that Plaintiff may be attempting to state a claim based on the deportation of third parties, he does not have standing to raise such claims. "The default rule is that 'a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.' " E. Bay Sanctuary Covenant v. Trump, 349 F.Supp.3d 838, 852 (N.D. Cal. 2018) (quoting Powers v. Ohio, 499 U.S. 400, 410 (1991)); see also Oregon v. Legal Services Corp., 552 F.3d 965, 971 (9th Cir. 2009); Fleck and Associates, Inc. v. Phoenix, 471 F.3d 1100, 1104 (9th Cir. 2006); Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001). To assert the rights of a third party, (1) "[t]he litigant must have suffered an 'injury in fact' "; (2) "the litigant must have a close relationship to the third party"; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." E. Bay Sanctuary Covenant, 349 F.Supp.3d at

852 (quoting Powers, 499 U.S. at 410-11).

Also, *pro se* litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions and other documents on behalf of others. See Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself.' ").

### 2. United States and Agencies are Entitled to Sovereign Immunity Unless Immunity has been Expressly Waived

Generally, the United States and its agencies are entitled to sovereign immunity from suit unless Congress has expressly waived immunity. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); Kaiser v. Blue Cross of California, 347 F.3d 1107, 1117 (9th Cir. 2003); Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997). "Any waiver of immunity must be 'unequivocally expressed,' and any limitations and conditions upon the waiver 'must be strictly observed and exceptions thereto are not to be implied.' " Hodge, 107 F.3d at 707 (quoting Lehman v. Nakshian, 453 U.S. 156, 160-61 (1981).) In this instance, Plaintiff has not identified the federal rights that he contends have been violated by the imposition of the immigration detainer.

While the Court recognizes that federal courts have found that they can consider claims related to ICE's issuance of detainers, the complaint alleges no facts to indicate that that the detainer was issued in violation of Plaintiff's federal rights or that he is being illegally held based on the detainer. See Roy v. Cty. of Los Angeles, No. CV-12-09012-AB-FFMX, 2018 WL 914773, at *18 (C.D. Cal. Feb. 7, 2018), reconsideration denied, No. CV-12-09012-AB-FFMX, 2018 WL 3439168 (C.D. Cal. July 11, 2018); Mendia v. Garcia, 768 F.3d 1009 (9th Cir. 2014); Gonzalez v. Immigration & Customs Enf't, No. CV-13-04416-BRO-FFMX, 2014 WL 12605368, at *7 (C.D. Cal. July 28, 2014).

### 3. Plaintiff Fails to Allege Facts to State a Claim Based on the Detainer

Here, Plaintiff challenges the imposition of an immigration detainer placed on him while he is incarcerated due to a state court conviction. Plaintiff alleges that the "Trump Administration commands ICE to place holds on asylees/refugees if we got any type of trouble with the law and open deportation matters against us to take away the asylum status that was

given to us under the international law and under the United Nations 'U.N.' Convention against Torture." (Compl. at 4.) However, Plaintiff's complaint is devoid of any facts by which the Court could find that Plaintiff's federal rights have been violated by the immigration detainer.

The Code of Federal Regulations provides that

> Any authorized immigration officer may at any time issue a Form I–247, Immigration Detainer–Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a).

It appears that Plaintiff believes that the detainer is illegal because he was previously granted asylum. Although Plaintiff has been granted asylum, "asylum is not irrevocable. The Attorney General may terminate an alien's asylum status based on changed circumstances, a subsequent determination that a statutory bar applies, or under various other conditions." E. Bay Sanctuary Covenant, 349 F.Supp.3d at 845 (citing 8 U.S.C. § 1158(c)(2)). A previous grant of asylum does not preclude the government from finding Plaintiff removable where he has been found to be within one of the enumerated classes of deportable aliens. 8 U.S.C. § 1227(a); Robleto-Pastora v. Holder, 591 F.3d 1051, 1057 (9th Cir. 2010).

Further, to the extent the Plaintiff is attempting to preemptively litigate any defense to future removal proceedings, this Court lacks jurisdiction to address his claims. See 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law or fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order of removal . . . ."); 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ."). Any claims challenging a final order or seeking to be released from custody once he is transferred into federal custody are properly raised in habeas corpus and not in an action brought under section 1983. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Plaintiff's allegation that he was previously granted asylum and now an immigration detainer has been placed on him is insufficient for the Court to reasonably infer that his federal rights are being violated.

4. Double Jeopardy

Plaintiff contends that placing an immigration detainer on him after he has been granted asylum results in double jeopardy. The Double Jeopardy Clause precludes "a second prosecution for the same offense," and prevents "the State from 'punishing twice, or attempting a second time to punish criminally, for the same offense.'" Kansas v. Hendricks, 521 U.S. 346, 369 (1997) (quoting Witte v. United States, 515 U.S. 389, 396 (1995)). These protections govern prosecutions and sentences carried out in state and federal court based on criminal charges.

The Supreme Court has held that removal proceedings are a civil, not a criminal, matter. Arizona v. United States, 567 U.S. 387, 396 (2012); Zadvydas, 533 U.S. at 690. Deportation is not criminal punishment and therefore double jeopardy is inapplicable. LeTourneur v. Immigration & Naturalization Serv., 538 F.2d 1368, 1370 (9th Cir. 1976); Urbina-Mauricio v. I.N.S., 989 F.2d 1085, 1089 n.7 (9th Cir. 1993). Plaintiff cannot state a claim for double jeopardy based on the immigration proceedings.

5. Torture

Plaintiff contends that imposing an immigration detainer amounts to torture in violation of international law. Among the rights that are universally proclaimed by all nations is a fundamental right of all individuals to be free from torture. Filartiga v. Pena–Irala, 630 F.2d 890 (2d Cir. 1980); see also Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 717 (9th Cir. 1992) (the Ninth Circuit held that "the right to be free from official torture is fundamental and universal, a right deserving of the highest status under international law, a norm of *jus cogens*"). The United Nations has defined torture as "any act by which severe pain and suffering, whether physical or mental, is intentionally inflicted by or at the instigation of a public official on a person for such purposes as . . . intimidating him or other persons."[3] Filartiga, 630 F.2d at 883.

---

[3] "[T]orture means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted by or at the instigation of a public official on a person for such purposes as obtaining from him or a third person

1  Torture constitutes an aggravated and deliberate form of cruel, inhuman or degrading treatment
2  or punishment. Id. at 883 n.11 (quoting Declaration on the Protection of All Persons from Being
3  Subjected to Torture, General Assembly Resolution 3452, 30 U.N. GAOR Supp. (No. 34) 91,
4  U.N.Doc. A/1034 (1975)).

"[T]orture is a label that is 'usually reserved for extreme, deliberate and unusually cruel practices, for example, sustained systematic beating, application of electric currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain.' " Simpson v. Socialist People's Libyan Arab Jamahiriya, 326 F.3d 230, 234 (D.C. Cir. 2003) (quoting Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 92-93 (D.C. Cir. 2002)). Plaintiff's claims do not meet the definition of torture. See Doe v. Qi, 349 F.Supp.2d 1258, 1314-18 (N.D. Cal. 2004) (examining cases rising to the level of torture such as sustained beatings for months; being beaten, kicked, and punched until unconscious; binding the arms and legs, and whipping victim on legs and back and threatening death; direct attacks and deprivation of basic human necessities, inflicting severe pain over several day period to force confession; mental harm due to threat that plaintiff or another would be imminently subjected to death or severe physical pain or suffering). Placing an immigration hold on an inmate, even where he is unable to address the immigration case for months or years, does not amount to torture.

### 6. Cruel and Unusual Punishment in Violation of the Eighth Amendment

Plaintiff states that the imposition of the immigration detainer is cruel. To the extent that Plaintiff is attempting to allege a claim for cruel and unusual punishment, he cannot do so.

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials

---

information or confession, punishing him for an act he has committed or is suspected of having committed, or intimidating him or other persons. It does not include pain or suffering arising only from, inherent or incidental to lawful sanctions to the extent consistent with the Standard Minimum Rules for the Treatment of Prisoners." Filartiga, 630 F.2d at 883 n.11 (quoting Declaration on the Protection of All Persons from Being Subjected to Torture, General Assembly Resolution 3452, 30 U.N. GAOR Supp. (No. 34) 91, U.N.Doc. A/1034 (1975). Torture constitutes an aggravated and deliberate form of cruel, inhuman or degrading treatment or punishment. The definition of torture under the Torture Victim Protection Act mirrors that of the United Nations Convention against Torture. Qi, 349 F.Supp.2d at 1312.

have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).

While the Eighth Amendment prohibits cruel and unusual punishment, deportation is not punishment and does violation the Eighth Amendment. See Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 491 (1999) ("Even when deportation is sought because of some act the alien has committed, in principle the alien is not being punished for that act (criminal charges may be available for that separate purpose) but is merely being held to the terms under which he was admitted."); LeTourneur, 538 F.2d at 1370 ("deportation is not cruel and unusual punishment under the Eighth Amendment even though the penalty may be severe"); Briseno v. I.N.S., 192 F.3d 1320, 1323 (9th Cir. 1999) (denial of discretionary relief did not violate the plaintiff's rights under the Eighth Amendment because deportation is not criminal punishment). Plaintiff cannot state an Eighth Amendment claim based upon the possibility that he might be deported during the immigration proceedings.

### IV.

### CONCLUSION AND ORDER

For the reasons discussed, Plaintiff has failed to state a cognizable claim for a violation of his federal rights. Plaintiff shall be granted leave to file an amended complaint to cure the deficiencies identified in this order. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended

complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

2. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to the district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated: **November 15, 2019**

UNITED STATES MAGISTRATE JUDGE